**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Leticia Gonzalez De Botello, | ) | No. CV 10-01203-PHX-JAT |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Pending before the Court is Plaintiff Leticia Gonzalez De Botello's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's application for Social Security disability benefits. For the reasons that follow, the Court affirms the ALJ's decision to deny Social Security disability benefits.

**I.     PROCEDURAL HISTORY**

On July 27, 2007, Plaintiff filed an Application for Disability Insurance Benefits, alleging a disability onset date of February 12, 2007. Record Transcript ("TR") 94. Plaintiff asserted that she is disabled due to a number of physical impairments: mainly urinary incontinence, pelvic and lower back pain with radiculopathy, severe headaches, and hip and internal injuries. Doc. 18 at 1–2; TR 112. The Social Security Administration ("SSA") denied Plaintiff's application, and found that Plaintiff was capable of performing other work

existing in significant numbers in the national economy.  TR 14–15.  The ALJ found that Plaintiff was not disabled, as defined in the Social Security Act, from February 12, 2007 through January 26, 2010, the date of the decision.  TR 16.  After Plaintiff's request for review by the SSA Appeals Counsel was denied, Plaintiff commenced this action before the District Court.  TR 1.

Pending before the Court is Plaintiff's appeal filed on June 10, 2010, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.  Doc. 1.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Disability Claim

Plaintiff claims that she has been unable to work since February 12, 2007.  TR 94. She alleges in her briefs to this Court that she is disabled due to the following physical and mental impairments: depressive disorder; gastroesophageal reflux; acute pancreatitis; chronic pancreatitis; spinal stenosis of the cervical and lumbar region with neurogenic claudication; memory loss; headache; diarrhea; abdominal pain; and vertiginous syndromes and other disorders of the vestibular system.  Doc. 22.  Before the ALJ, however, Plaintiff alleged pelvic and lower back pain with radiculopathy, urinary incontinence, severe headaches, and hip and internal injuries.  Doc. 18 at 1–2; TR 112.

### B.    Plaintiff's Background

Plaintiff was born on July 28, 1957; stands at 5 feet, 1 inch tall; and weighs 145 pounds.  TR 30, 111.  She completed the tenth grade of high school and a one-year training program to become a certified nursing assistant.  TR 118.  She has worked as a housekeeper, nutrition technician, and housekeeping supervisor at a number of hotels and hospitals, until she began working as a certified nursing assistant ("CNA") from 2000 to 2007.  TR 32, 40–41, 113.  She has four children who assist her at home, and she cares for her husband, who receives social security disability for insulin dependent diabetes and congestive heart failure.  TR 235.

Plaintiff claims her health began to deteriorate after a total vaginal hysterectomy in February 2007 for a prolapsed uterus and bladder.  TR 235.  She hemorrhaged severely after

the operation, received nine transfusions, and was hospitalized in the intensive care unit for six days. TR 235. She later underwent a post-operative exploratory laparotomy. TR 235. She claims ongoing moderately severe pelvic and low back pain radiating to her legs and groin, as well as persistent stress incontinence. TR 38, 235, 264.

Plaintiff testified that she is easily tired and short of breath. TR 135. She cannot lift her thirty-pound grandson, and she can walk only fifty to one hundred feet before resting, sometimes up to thirty or sixty minutes. TR 132, 135. She uses the toilet frequently and requires the use of an assistive seat to shower. TR 131. She is in continuous pain and needs reminders to take her medications. TR 132. Her family prefers that someone be with the claimant as much as possible. TR 124. The claimant testifies that despite injections, her pain resides in her low back radiating down to her toes. TR 36. At the time of the hearing, she had been to multiple physicians and undergone many tests, but the source of her pain was still unknown. TR 136. She states she cannot work because of her pain, which has been ongoing from her pelvis through her abdomen and legs since her February 2007 surgery, despite pain medications. TR 37. The claimant testifies she cannot stand for longer than 15 minutes due to hip pain and shortness of breath. TR 37.

Plaintiff claims she can drive with help into and out of the truck, but not after taking her pain medication. TR 133. She testified that she cooks for herself, but only "simple" dishes like sandwiches and quesadillas. TR 131. She stated that she needs help shaving and doing laundry. TR 132. Plaintiff attends church and goes shopping, but uses an electric chair for the latter. TR 133. Plaintiff testified that when she goes out, she sometimes wears a diaper, but otherwise she wears a pad. TR 38.

**C.** **Record Evidence**

**1.** **Physical Impairments**

Plaintiff had a total vaginal hysterectomy for a prolapsed uterus and bladder in February 2007. TR 13. Following the operation, Plaintiff developed abdominal pain due to a severe postoperative hemorrhage. TR 186, 206, 308. The hemorrhage required further

surgery and additional hospitalization.  TR 206.  A few days later, Plaintiff was doing "quite well" and her surgeon discharged her with some pain medications.  TR 187.

Following the surgery, Plaintiff continued to have pain in her groin and buttocks and suffered from incontinence.  TR 190-92.  She was prescribed additional pain medications and, in June 2007, she underwent surgery to treat her incontinence.  TR 190-92, 224-25, 253.  Her surgeon, Christopher Stewart, M.D., indicated that one of the planned surgical procedures could not be performed because Plaintiff had not taken the prescribed antibiotics for a urinary tract infection a week prior.  TR 224-25.  She stated that she could not afford the antibiotics.  TR 225.

In July 2007, Dr. Stewart stated that Plaintiff was "doing well in terms of control of continence," but she continued to complain of pelvic pain.  TR 215, 231.  Dr. Stewart prescribed additional pain medication, extended her "disability" for another month, and referred her to Dr. Hibner.  TR 215.

Plaintiff began seeing chronic pelvic pain specialist Michael Hibner, M.D., in August 2007.  TR 214. Dr. Hibner treated Plaintiff with a series of image-guided anaesthetic injections to block pain-causing nerves in her pelvis.  TR 245, 254-60.  Plaintiff reported some relief of her pelvic pain, but then declined further injections.  TR 250-51.  She did not fill several prescriptions due to financial constraints.  TR 251.  Her physician suggested physical therapy, but Plaintiff again declined, citing her financial situation.  TR 251.  When Plaintiff continued to report pain in February 2008, Dr. Hibner offered Plaintiff a laparoscopy to determine whether internal sutures were causing her pain.  TR 249.  Dr. Hibner prescribed pain medications and referred her to a pain management clinic.  TR 249.

In November 2007, Bernard Eisenfeld, M.D., performed a radiologic exam of her lumbosacral spine.  TR 234.  X-rays of Plaintiff's lower back and pelvis were normal: the vertebrae and the cervical disk spaces were of a normal height, and there was no evidence of injury, scoliosis, or significant degenerative changes.  TR 234.  On November 29, 2007, Plaintiff saw William Chaffee, M.D.,  TR 235.  She moved slowly and deliberately during the examination, but demonstrated a normal gait with tandem, heel-toe walking and

squatting. TR 236. Her range of motion for all joints was within normal limits, straight leg raising test was negative, motor strength was full in all extremities, and muscle bulk and tone were within normal limits. TR 237. Dr. Chaffee opined the claimant could stand or walk six hours per day, with no restrictions in sitting and no need for an assistive device. TR 237. Plaintiff could lift or carry fifty pounds occasionally and twenty pounds frequently, he opined, with occasional restrictions in stooping, crouching, climbing, kneeling, pulling, and crawling. TR 237. He noted slight tenderness in both lower quadrants of Plaintiff's abdomen and in the lumbosacral area. TR 236–37. His diagnoses were for post-operative back and pelvic pain of uncertain cause and associated depression. TR 237.

Plaintiff had another consultative examination on June 13, 2008, with Quirino Valeros, M.D., TR 263–70. Plaintiff had a normal gait and station without any medical or assistive device. TR 266. She showed only slight limitation of flexion and lateral flexion in the lumbar spine, and otherwise normal flexion, extension and lateral flexion in the cervical spine. TR 266. Dr. Valeros stated that Plaintiff demonstrated no limitation in any joints, good motor strength in all extremities with no atrophy, and negative Babinski sign and Romberg test. TR 266. Dr. Valeros's diagnoses were chronic low back and hip pain possibly from surgery; bilateral leg radiculopathy secondary to postoperative surgery; status post hysterectomy; status post postoperative hemorrhoids; and status post bladder and urinary incontinence with possible complication. TR 266. Dr. Valeros found that claimant could lift or carry twenty pounds occasionally and ten pounds frequently with no other noted limitations. TR 267. X-rays from June 2008 of the right knee, lumbosacral spine, and hips showed normal results. TR 271.

In July 2008, Plaintiff met with State Agency physician Erika Wavak, M.D., for a physical residual functional capacity assessment. TR 274. Dr. Wavak agreed that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight hour workday; and occasionally kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. TR 275. Plaintiff could also frequently climb ramps or stairs, balance, and stoop, in order to prevent injury and the exacerbation of symptoms. TR 275.

An October 2008 abdominal and pelvic CT scan revealed a tiny hypercascular 1.3 cm right hepatic nodule that was possibly a small hemangioma, a 1.8 cm pelvic nodule that was possibly a native ovary or an enlarged node, and a slightly low-lying bladder. TR 284. However, a follow-up February 2009 pelvic ultrasound and April 2009 pelvic CT scan found no significant interval change in the 2 cm nodular density along the anteromedial aspect of the right iliac vessels, which represented either a stable node or the right ovary. TR 286. It also showed several small segmental foci of apparent wall thickening in the rectosigmoid colon, which raised the possibility of regional enteritis. TR 286.

## 2. Vocational Expert

During the September 1, 2009 hearing before the ALJ, the Vocational Expert ("VE") testified to Plaintiff's past work history and potential for future employment. The VE described Plaintiff's most recent employment as a CNA as medium and semi-skilled with a specific vocational profile ("SVP") of four. TR 40. Her positions as a nutrition technician and hospital housekeeper are classified as medium, unskilled, at SVP two, while her work as a housekeeping supervisor is medium, skilled, at SVP six. TR 40. The VE said that Plaintiff's previous skills would not be transferrable to light or sedentary work without additional training or education. TR 42.

The ALJ described a hypothetical person who is fifty-two years old with a limited education. TR 42–43. The position must require only "light exertion level work"; have an option to sit or stand; and meet postural restrictions, meaning no crawling, crouching, climbing, squatting, or kneeling. There must also be no use of the legs or feet in terms of pushing or pulling. TR 42–43. "Light work" was defined as the ability to lift up to twenty pounds occasionally and lesser weights on a more frequent basis. TR 42–43.

The VE gave three possibilities for jobs that exist in the state and national economy that such a hypothetical person could perform: parking lot cashier, food and beverage order clerk, and pari-mutuel ticket seller. TR 43. In the Arizona economy, there are 6,000 of the first type of job available; 5,100 of the second; and 1,650 of the third. TR 43–44. In the U.S. economy, there are 141,000 of the first type of job available; 200,000 of the second; and

200,000 of the third. TR 43–44. During the hearing, the ALJ eliminated the food and beverage order clerk as a possibility, because it didn't fit the hypothetical posed to the VE. TR 44.

Plaintiff questioned the VE about how her napping frequency would affect these employment opportunities. TR 47. Plaintiff testified that her pain medication makes her dizzy and sleepy; she takes two-hour naps. TR 46–47. The VE testified that Plaintiff could not nap at that frequency and still work, because an employer would not accommodate it. TR 47.

## III. THE ALJ'S DECISION

The ALJ evaluated Plaintiff's alleged disability according to the five-step evaluation process set forth in 20 C.F.R. § 416.920 (2011). TR 10–16. As an initial matter, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. TR 11. Next, the ALJ found Plaintiff suffered from the following impairments which are severe when considered in combination: degenerative joint disease, degenerative disc disease with radiculopathy to her legs, and urinary incontinence. TR 11. However, the ALJ concluded that Plaintiff's impairments failed to meet the criteria of the third step. TR 11–12. This step requires that a claimant's impairment or combination of impairments "meets or equals one of [the SSA's] listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(iii). The ALJ considered Medical Listings 1.02, 1.04, and 5.02, and concluded that the Plaintiff "does not meet or equal" any of them. TR 11–12.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with restrictions as defined in 20 C.F.R. § 404.1567(b). TR 12. The RFC is defined as "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). Before determining the RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but he doubted her statements concerning the symptoms' intensity, persistence, and limiting effects. TR 13.

The ALJ gave significant weight to consultive examiner Dr. Valeros and State Agency physician Dr. Wavak. TR 14. The ALJ found that their opinions agreed with the objective findings in the record, as well as the claimant's statements regarding her capacity to perform daily activities. TR 14. The ALJ found that Plaintiff is limited to unskilled work with a sit or stand option and no crawling, crouching, climbing, squatting, kneeling, or use of her lower extremities for pushing or pulling. TR 12.

At step four of the sequential process, the ALJ found that Plaintiff is unable to perform any of her past relevant work. TR 14. Her positions as a CNA, hospital housekeeper, and food service nutrition technician all correspond to activity levels and specific vocational profiles beyond Plaintiff's current capabilities. TR 14–15. According to the vocational expert and the Dictionary of Occupational Titles, a CNA is medium, semi-skilled work at SVP four, a hospital housekeeper is medium, unskilled work at SVP two, and a food service nutrition technician is medium, unskilled work at SVP two. TR 15.

The ALJ concluded at step five of the sequential process that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, and thus she is not disabled. TR 15. Relying on the vocational expert's testimony and considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff could perform the job requirements of a parking lot cashier or pari-mutuel ticket seller. TR 16. The vocational expert testified that there are 6,000 parking lot cashiers in Arizona and 141,000 in the United States (DOT No. 211.462-010), and that there are 1,650 pari-mutuel ticket sellers in Arizona and 200,000 in the United States (DOT No. 211.467-022). TR 15–16.

## IV.    STANDARD OF REVIEW

A district court

> may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible

to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted).  This standard of review exists because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Also under this standard, the Court will uphold the ALJ's findings "if supported by inferences reasonably drawn from the record."  *Batson v. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  However, the Court must consider the entire record as a whole and "may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbings v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

## V.  LEGAL STANDARD

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability."  42 U.S.C. § 423(a)(1)(E) (Supp. 2011).  The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).  A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  *Id.* § 423(d)(2)(A).  The Social Security regulations set forth a five-step sequential process for evaluating disability claims.  20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process).  A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at the first four steps, but

the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1.    First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.[1]

2.    If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). That means the "abilities and aptitudes to do most jobs," for example: (1) walking; standing, lifting, carrying, and reaching; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervisors, co-workers, and usual work situations; and (6) dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, the claimant is not disabled.

3.    Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. *Id.* § 404.1520(d). If the impairment or impairments do not meet or equal a listed impairment, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] record" before proceeding to the next step. *Id.* § 404.1520(e). A claimant's "residual

---

[1] Here, Plaintiff does not challenge the ALJ's finding that Plaintiff did not engage in substantial gainful activity during the period of February 12, 2007 through January 26, 2010. TR 11.

functional capacity" is the most she can do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1–2).

4.   At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5.   At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors—age, education, and work experience. *Id.* § 404.1520(g)(1). If the claimant can make an adjustment to other work, then she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the Commissioner has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

## VI.   ANALYSIS

The Court finds it difficult to discern the pro se Plaintiff's arguments in her briefs, but Plaintiff's opening brief has two central points. First, the ALJ's opinion was not based on substantial evidence. Plaintiff argues that the record was not adequately developed, that the analysis at step three of the sequential process was wrong, and that the ALJ inappropriately discredited her subjective testimony. Second, Plaintiff argues that this Court should consider new medical evidence presented for the first time on appeal.

### A.   ALJ'S Opinion Is Based on Substantial Evidence

Plaintiff argues that the ALJ's grounds for denial of benefits are insufficient. She asserts that additional testing should have been ordered, but the ALJ failed to adequately develop the record. Plaintiff also argues that she meets Medical Listings 1.02 and 1.04,

contrary to the ALJ's findings. And, according to Plaintiff, the ALJ improperly discounted her subjective pain testimony.

### 1. The Record Was Adequately Developed.

Plaintiff argues that the evidence before the ALJ was unsatisfactory, because her previous physicians should have conducted additional and more thorough testing. The Court finds that the ALJ met his duty to fully develop the record.

The ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ must be especially diligent when the claimant is not represented and "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts." *See id.*; *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978). However, "an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Ultimately, it is the plaintiff's burden to prove that he or she is disabled. *Id.* at 459 (citing 42 U.S.C. § 423(d)(5) (Supp. 2011)).

The ALJ did not shirk his duty. The ALJ had detailed records from all of Plaintiff's treating physicians. Plaintiff provided ample documentation during the hearing to supplement the already sizable record. There is no evidence of missing but relevant pieces of the puzzle, such as missing reports or ambiguous conclusions. Furthermore, the ALJ did not need to order additional testing, as ample testing had already been performed. Although Plaintiff is correct that no MRI had yet been ordered before the hearing, the record already contained several x-rays from varying years, CT scans from varying years, an ultrasound, and multiple, detailed assessments of functional capacity. The amount of testing conducted was entirely consistent with the impairments about which Plaintiff complained. Existing medical records were produced by Plaintiff's doctors. Further, because Plaintiff cannot demonstrate that the lack of counsel prejudiced her or resulted in an unfair proceeding, she is not entitled to a remand on that basis. *See Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981).

The ALJ had "no duty to develop the record by diagnosing" Plaintiff's other ailments. *Mayes*, 276 F.3d at 459. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459–60. To put an additional burden on the ALJ to discover the root of every subjective complaint, even if it is not supported by the unambiguous evidence before him or her, would be to improperly shift the Plaintiff's burden in proving disability. *See id.*

## 2. Step Three: Medical Listings 1.02 and 1.04

In her reply brief, Plaintiff argues that the ALJ's findings at step three are inadequate. For step three of the sequential process, which addresses whether the plaintiff meets or equals a listing, a boilerplate finding that merely states a claimant does not equal a listing is insufficient. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990). "[T]he ALJ must adequately explain his evaluation of alternative tests and the combined effects of the impairments." *Id.* An ALJ's failure to provide sufficient explanation constitutes legal error. *See id.* (remanding for proper consideration of step-three evidence); *Green v. Astrue*, No. CV-07-1382-PHX-DGC, 2009 WL 310284, at *3 (D. Ariz. Feb. 6, 2009). However, while an ALJ is required "to discuss and evaluate the evidence that supports his or her conclusion," the ALJ does not have to do so at any particular place in his or her opinion. *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001).

In the present case, the ALJ's holding at step three is rather conclusory. The ALJ merely wrote: "The claimant does not meet or equal Medical Listing 1.02 because there is no . . ." and proceeded with a recitation of the definition of Medical Listing 1.02. The ALJ followed the same format for Medical Listings 1.04 and 5.02. The ALJ deserves some recognition for including these listings at all, because the pro se plaintiff did not mention or allege any of them during the hearing. However, the ALJ did not set forth any meaningful analysis at step three. There is no explanation for which elements of the multi-part definition are not present, how the totality of Plaintiff's complaints does not equal one of the Listings, or how the ALJ arrived at any of those conclusions. The Court questions whether "[t]he omission of any discussion of [Plaintiff's] impairments in conjunction with the listings

frustrates any attempt at judicial review, especially in a case such as this where a claim is made under three different listings." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003).

The Court finds that the ALJ's analysis of step three was adequate and does not provide grounds for remand. The Ninth Circuit Court of Appeals has held that the step-three analysis does not need to appear in the section of the opinion designated for step three. *Lewis*, 236 F.3d at 513. It would be unnecessarily repetitive for the ALJ to include a detailed breakdown of the plaintiff's symptoms at each and every stage of the analysis. In this case, the ALJ gave a very thorough recitation of Plaintiff's complaints, medical history, and test results. This discussion merely appeared in the next section's discussion of residual functional capacity. Contrary to Plaintiff's contention, all of the puzzle pieces were present, even if not neatly assembled before the Court. Furthermore, the Ninth Circuit Court of Appeals made a distinction in *Lewis* that is informative upon this case. The court considered reversing for an insufficient boilerplate finding, but ultimately did not. *Id.* at 514. The plaintiff in *Lewis* "offered no theory, plausible or otherwise, as to" how he did meet or equal a listed impairment. *Id.* Similarly, in this case, Plaintiff did not mention or argue for any Medical Listing during the hearing before the ALJ. She did not mention or argue for any Medical Listing in her opening brief. While Plaintiff mentions Listing 1.04 and parts of Listing 1.02 in her reply brief, her references are even more conclusory than those of the ALJ. They are also incomplete. Plaintiff does not touch upon every element of each Listing in her statement of disagreement with the ALJ's holding. So even if her argument as stated is assumed to be true, it is not clear that Plaintiff could prevail. Because she does not offer any theory (plausible or otherwise) for why the Court should find—or the ALJ should have found—that she meets or equals one of the Medical Listings, the Court will not remand on those grounds. Plaintiff failed to meet her burden at step three.

### 3. Consideration of Subjective Pain Testimony in Step 4 Analysis

Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective complaints. She argues that the doctors' determinations about her abilities to stand, walk,

lift weight, and sit are wrong and neglect her constant pain.  The ALJ concluded that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ."  TR 13.  If a claimant produces objective medical evidence of an underlying impairment, as Plaintiff did here, then the ALJ cannot reject the claimant's subjective complaints based solely on a lack of objective medical support for the alleged severity of the pain.  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  If the ALJ finds the claimant's subjective pain testimony not credible, the ALJ must make findings sufficiently specific to allow the reviewing court to conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  *Id*. at 856–57.  If no affirmative evidence of malingering exists, then the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony about the severity of her symptoms.  *Id*. at 857.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

The Court concludes that the ALJ provided clear and convincing reasons for not fully crediting Plaintiff's testimony.  The ALJ found Plaintiff's reported pain and abilities in stark contrast with the X-rays' results, each doctor's conclusions about her abilities, and her own testimony regarding her abilities.  TR 13–14.  The ALJ found that the tests performed were largely negative or normal, which was objective evidence that Plaintiff's impairments were not as Plaintiff claimed.  TR 13–14.  The ALJ also pointed out that Plaintiff's claims of chronic pain were undermined by her own testimony about her daily activities, which included cooking, shopping, light cleaning, going to church, watching television, driving an automobile, and caring for her husband.  TR 14.  While the ALJ stated that he recognized Plaintiff was experiencing pain, the range of Plaintiff's daily activities was inconsistent with the alleged disability.  TR 12, 14.

Despite Plaintiff's testimony concerning the severity of her impairments, the ALJ's interpretation is reasonable and supported by substantial evidence.  Although the ALJ's

interpretation of Plaintiff's testimony may not be the only possible interpretation, it is not the Court's role to second-guess the ALJ's findings of fact. *See Rollins*, 261 F.3d at 857. Consequently, the Court rejects Plaintiff's argument that the ALJ improperly discounted her testimony. The ALJ gave clear and convincing reasons for discounting some of her testimony regarding the severity of her pain, and those reasons were supported by substantial evidence.

### B.     Admission of New Evidence

On appeal, Plaintiff submits evidence of new diagnoses by new doctors and additional testing performed after her hearing. She argues that the absence of the new evidence from the record is not her fault, but the fault of her original treating physicians, who should have performed more testing more than they did. The general standard for admitting new evidence at this stage in the process is well established in this circuit. "To justify a remand, [Plaintiff] must show that the [evidence] is material to determining her disability, and that she had good cause for having failed to produce that evidence earlier." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (citing 42 U.S.C. § 405(g) (2001)).

### 1.     The New Evidence Is Material

For the new evidence to be material under section 405(g), it must bear "directly and substantially on the matter in dispute." *Id.* (citing *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). Plaintiff must also demonstrate a "reasonable possibility" that the new evidence would have changed the administrative hearing's outcome. *Id.* (citing *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984)). Furthermore, Plaintiff must show "that the new evidence is material to and probative of [her] condition as it existed at the relevant time—at or before the disability hearing." *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987) (citing 42 U.S.C. § 416(i)(2)(G)).

Defendant argues that the new evidence is immaterial, because the reports are not retrospective. Although Plaintiff's new doctors diagnosed her with spinal stenosis and other afflictions that may be relevant to a determination of disability, Defendant points out that

none of the evidence gives any of the diagnosed ailments an onset date. Thus, Defendant argues, the new evidence is not material and should be excluded.[2]

Defendant is correct insofar as that evidence of a disability occurring after the relevant period is not material. *See id.*; *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971); *Fyfe v. Finch*, 311 F. Supp. 522, 557 (W.D. Pa. 1970). However, medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Evidence of a condition linked to an ongoing disability alleged during the hearing is material, even if that evidence was gathered later. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). Courts have also permitted evidence of degenerative diseases that was gathered after the hearing. *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975).

In *Kemp*, the new medical reports were based on observations made after the relevant period and prepared after the hearing. *Id.* at 968–69. The evidence was permitted because it revealed that the plaintiff's condition was "the result of a degenerative process" and thus had "bear[ing] directly and substantially on the matter in dispute." *Id.* Here, Plaintiff's new evidence is material because it is probative of the extent of her disability during the relevant period. The new evidence concerns a degenerative process, similar to that in *Kemp*. *Id.*

There is also a reasonable possibility that the ALJ would have reached a different conclusion had this evidence been before him. The ALJ dismissed Plaintiff's testimony concerning her subjective symptoms because he found that Plaintiff lacked credibility. Evidence of spinal stenosis and other impairments would have bolstered Plaintiff's claim of back and pelvic pain. Even though Plaintiff's condition may have deteriorated further, the extent of her health problems in July 2010 provides direct, substantial evidence that she was

---

[2] Defendant's response brief does not address all of Plaintiff's new evidence. It only discusses the fourteen pages of exhibits attached to Plaintiff's opening brief, but does not touch upon the fifty-five pages of exhibits filed with the Court two months earlier on November 5, 2010.

suffering from the same or similar ailments in January 2010. Had this evidence been before the ALJ, there is a reasonable possibility that the ALJ would have found Plaintiff disabled.

There is substantial support for these propositions in other circuits. The Ninth Circuit Court of Appeals cited to much of it in *Smith v. Bowen*, 849 F.2d 1222, 1225–26 (9th. Cir. 1988). *See, e.g.*, *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984) (finding that in a claim based on diabetes, medical evidence of condition subsequent to expiration of insured status is relevant, because it may bear upon the severity of condition before expiration); *Poe v. Harris*, 644 F.2d 721, 723 n.2 (8th Cir. 1981) (finding that in a case of disabling back pain, evidence subsequent to last date of eligibility "is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date"); *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) (finding that medical evaluations made two years subsequent to expiration of insured status are not automatically barred from consideration and may be relevant to prove a previous disability); *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (finding that a diagnosis even several years after the actual onset of the impairment is entitled to significant weight); *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir. 1974) (same); *McGee v. Bowen*, 647 F. Supp. 1238, 1249 (N.D. Ill. 1986) (finding that evidence and diagnoses from many years after the expiration of insured status are both admissible and relevant); *Hartman v. Bowen*, 636 F. Supp. 129, 132 (N.D. Cal. 1986) (finding that although plaintiff has to establish that disability existed prior to the expiration date, she is "not confined . . . to evidence in existence prior to that date").

Plaintiff's new evidence is linked to complaints she made at the hearing. The diagnoses are for degenerative diseases. Accordingly, it is material to the issues before the ALJ and before this Court.

### 2.     No Good Cause for Admitting the New Evidence

"To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes*, 276 F.3d at 463. "If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." *Key v. Heckler*,

754 F.2d 1545, 1551 (9th Cir. 1985). However, "[a] claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied." *Mayes*, 276 F.3d at 463. "The good cause requirement would be meaningless if a claimant were allowed to introduce new evidence simply by obtaining a new opinion after a hearing." *Lay v. Astrue*, No. 07CV1112 JLS (NLS), 2008 WL 2858321, at *7 (S.D. Cal. July 22, 2008) (citing *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984)).

The courts of the Ninth Circuit have repeatedly refused to find good cause for new evidence in cases similar to the case currently before the Court. In *Mayes*, the plaintiff attempted to introduce new evidence from a new doctor. She blamed the doctors she saw before her hearing for the evidence's absence. 276 F.3d at 463 n.6. The Court of Appeals rejected that argument, in part because the plaintiff failed to establish that her health plan had prevented her from going to the new doctor earlier. *Id.* Similarly, in *Lay*, a district court rejected new evidence produced by post-hearing examinations (including an MRI) because the good cause standard was not met. *Lay*, 2008 WL 2858321, at *7. The plaintiff was aware of his health problems and had already been evaluated several times. *Id.* He could not adequately explain why he did not seek the additional evaluations prior to the hearing. *Id.* Finally, in *Allen*, the pro se plaintiff's new evidence was rejected for lack of good cause. 726 F.2d at 1473. Although the new reports in *Allen* were made after the hearing, the plaintiff was aware of the problems they addressed at the time of the hearing. *Id.*

Similar to the plaintiffs in *Mayes*, *Lay*, and *Allen*, Plaintiff has not explained why she did not or could not have seen Dr. Le or the other doctors providing the favorable records before the hearing before the ALJ. She has not adequately explained why the testing done by those doctors could not have been conducted before the hearing. She was aware of her health problems and was evaluated for them several times by several doctors. Based on Ninth Circuit precedent, this Court cannot find good cause for remanding this action for consideration of Plaintiff's additional medical records. The good cause standard would be eviscerated if plaintiffs were permitted to seek more favorable opinions from new physicians

after every unfavorable ruling by an ALJ. The law does not allow for a "second bite at the apple" without good cause. The obvious explanation for the new medical evidence is that when Plaintiff failed to succeed on her disability claim after the hearing, she sought out a new expert witness who might better support her position—this is not permitted in the Ninth Circuit. *Key*, 754 F.2d at 1551.

The Court of Appeals has previously found good cause for new evidence in cases that appear similar to this case, but those decisions have been distinguished. In *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982), the Court of Appeals found good cause for new evidence obtained after the hearing before the ALJ. The Court of Appeals held simply that because the new evidence was created after the final decision, it could not have been presented at the hearing, and thus "good cause" was found. *Id.* A similar result was reached in *Burton v. Heckler*, 724 F.2d 1415 (9th Cir. 1984), which reiterated the reasoning of *Ward*.

These two cases were previously distinguished by the Court of Appeals. First, the plaintiff in *Ward* had no knowledge of her new health problem until a hospital discovered it five years after the hearing. *Allen*, 726 F2d at 1473. Second, the Court of Appeals drew a line in *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988) that is informative upon the present case. The Court of Appeals compared the seemingly disparate results of *Allen* (new evidence rejected) and *Burton* (new evidence accepted). *See id.* at 423–24. The evidence rejected in *Allen* consisted of "the results of new tests and evaluations by new expert witnesses." *Id.* at 424 n.5. The evidence accepted in *Burton*, on the other hand, was a recent letter from a doctor the plaintiff had already seen. *Id.* The accepted new evidence did not "attempt[] to raise new issues," but rather "represent[ed] the ongoing medical evaluation of a consulting physician who had already participated in the disability determination process." *Id.*

In the present case, the Plaintiff was certainly aware of all the symptoms tested for, and demonstrated by, the new evidence. She had been evaluated for the same issues several times by several doctors in the record before the ALJ. The new evidence is "the results of new tests and evaluations by new expert witnesses," just like the evidence rejected in *Allen*. Once again, the Ninth Circuit's good cause standard does not permit a second bite at the

apple for every claimant who sees new doctors.  Accordingly, the Court must reject Plaintiff's newly submitted evidence, and affirm the ALJ's decision denying Plaintiff's claim.

**VII.    CONCLUSION**

In conclusion, the Court finds that the ALJ did not commit legal error by not developing the record further, by not providing more analysis at step three of the sequential process, or by discrediting Plaintiff's subjective pain testimony.  Furthermore, the new evidence submitted to this Court may be material, but Plaintiff has not demonstrated good cause for failing to present it earlier in the disability claims process.

For the reasons stated above,

**IT IS HEREBY ORDERED** that the decision of the ALJ is affirmed, and the Clerk of the Court shall enter judgment accordingly.  Said judgment shall serve as the mandate in this case.

DATED this 1st day of August, 2011.

James A. Teilborg
United States District Judge